**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FERNANDO NUNEZ,** | : | **CIVIL ACTION** |
| **Petitioner,** | | |
| | : | |
| **v.** | | |
| | : | |
| **SUPERINTENDENT MASON, et al.,** | : | **NO. 14-2192 (MAK)** |
| **Respondents.** | : | |

**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner, Fernando Nunez, is a Pennsylvania state prisoner currently serving a sentence of life without parole for first-degree murder and related offenses.[1] Before this Court is his counseled petition for a writ of habeas corpus, raising seven claims. After careful review of the record, Respondents conclude that Nunez is entitled to habeas relief on his claim that the trial court violated his Sixth Amendment right to self-representation when it conducted *voir dire* of a potentially tainted juror in Nunez's absence, and that the state courts' decision otherwise was contrary to clearly established federal law.

---

[1] Nunez is also serving a second life sentence for offenses that are unrelated to the crime at issue in this case. That second life sentence will be unaffected by the disposition of this petition. *See Commonwealth v. Nunez*, CP-51-CR-0205251-2003.

Respondents do not arrive at this conclusion lightly. But Respondents are mindful that "[p]rosecutors have a special duty to seek justice." *Connick v. Thompson*, 563 U.S. 51, 65–66 (2011). Respondents' position here is the product of a thorough review of the record, coupled with "careful consideration" in light of its "primary authority for defining and enforcing the criminal law." *Kennedy v. Superintendent Dallas SCI*, 50 F.4th 377, 382 (3d Cir. 2022) (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982)).

Though the evidence of Nunez's guilt is compelling, the error here is plain and considered structural, so Respondents are constrained to conclude that Nunez is entitled to habeas relief in the form of an order granting his release unless retried within 180 days.[2]

## I.      FACTUAL AND PROCEDURAL HISTORY

### A.  The crime

In May 2001, Russell Chrupalyk, owner of Adelphia Moving and Storage Company in North Philadelphia, hired Nunez to kill his business partner, Christopher Jastrzebski. In the early morning hours of May 13,

---

[2] In the interests of judicial economy, Respondents only address Nunez's claim one. Nunez is entitled to complete relief on this claim, and the disposition of it will moot the remainder of his petition. Should the Court wish to hear from Respondents regarding Nunez's remaining claims, Respondents respectfully request the opportunity to supplement this response.

2001, Nunez and two co-defendants went to Adelphia Moving and Storage to complete the assignment. Upon arriving, Nunez shot Jastrzebski twice, once in the chest and once in the head, and fled. Nunez was apprehended months later and charged with murder, criminal conspiracy, and related offenses.

### B.  Trial proceedings

Nunez was tried separately from his three co-defendants in November 2005 before the Honorable Sheila Woods-Skipper of the Philadelphia Court of Common Pleas. During pretrial proceedings, Nunez was represented by court-appointed counsel James Bruno.[3]

After a jury was empaneled, but before trial began, Nunez moved to represent himself at his trial. N.T., 11/9/2005 at 21. The trial court sent Nunez for an immediate competency evaluation and received a verbal report from the doctor that Nunez was competent to proceed. *Id*. at 22. The trial court then engaged Nunez in the following colloquy, reproduced in full, regarding his choice to represent himself, his reasons, and the downsides of doing so:

---

[3] Nunez's case was severed from that of his three co-defendants, who were tried together, to allow them to cross-examine a cooperating witness about his role in the other murder Nunez was ultimately convicted of. *See* N.T., 9/27/2005 at 4–5.

**THE COURT**: Before I can permit you to represent yourself, which is your absolute right to do so, I must just ask you some questions and make sure you understand the ramification of self-representation. You understand that you have the right to be represented by a lawyer; do you understand that?

**THE DEFENDANT**: I do.

**THE COURT**: Do you understand that Mr. Bruno has been appointed to represent you in this case?

**THE DEFENDANT**: I do.

**THE COURT**: Very well. Do you understand that a lawyer will be, and has been appointed to represent you, so if you cannot afford a lawyer, one would be provided to you by the Court? Do you understand that?

**THE DEFENDANT**: Right.

**THE COURT**: Do you understand that you are charged in this case with murder and murder of the first degree to be specific? Do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: Do you understand that murder in the first degree is the premeditated intentional killing with malice? Do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: Do you understand that if the jury convicts you of first-degree murder, the mandatory sentence that must be imposed is a sentence of life imprisonment? Do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: Do you understand that if you intend to represent yourself, you will be bound by all the same rules and regulations that applies to lawyers? Do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: You will be expected to note courtroom procedure, the rules of criminal procedure, and the rules of evidence; do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: And the Court will hold you to the same standards even though you have no legal training; do you understand that?

**THE DEFENDANT**: Right.

**THE COURT**: You understand there are certain advantages to having a lawyer represent yourself. Some of those advantages include the fact, obviously, they are familiar with the courtroom procedure, the rules of evidence, and the rules of criminal procedure; do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: Do you understand that a lawyer would be familiar with your pretrial motions and preserving your rights during the course of the trial? Do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: The lawyer will also be able to protect your right to a speedy trial and assist you in the selection of the jury, but we've already selected the jury with your lawyer representing you in this matter and you participated in that; is that correct?

**THE DEFENDANT**: That's correct.

**THE COURT**: Do you understand that as you are cross-examining the witnesses, you will still be held to the same standards as your lawyer in terms of following the rules of the court, the rules of criminal procedures, rules of evidence? Do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: Do you understand having a lawyer represent you, he will be able to challenge the admissibility of certain evidence and the testimony of certain witnesses? Do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: You, obviously, have those same rights; do you understand?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: Do you understand a lawyer would be more familiar with arguing the law and the facts to the jury on your behalf? Do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: The lawyer would also be more familiar with what legal motions to raise before the judge during the course of the trial; do you understand that?

**THE DEFENDANT**: I understand that.

**THE COURT**: Very well. You also further indicate -- strike that. You understand that in the event of a conviction, your lawyer would know what motions to file, post-trial as well, and how to protect your legal rights in terms of a motion to a new trial or motions for arrest of judgment; do you understand that?

**THE DEFENDANT**: I understand.

6

**THE COURT**: Do you understand that the objections that are not raised during the course of the trial may be permanently lost on appeal, if they are not raised? Do you understand that?

**THE DEFENDANT**: I understand that can be waived.

**THE COURT**: Do you understand that in order to effectuate your right to appeal certain errors, if you do not raise those errors at the time, they may be also lost during your appellate procedure? Do you understand that?

**THE DEFENDANT**: I understand.

**THE COURT**: You also understand that by representing yourself, you will lose your right to claim ineffective assistance of counsel since you are representing yourself? Do you understand that?

**THE DEFENDANT**: Yes, I do.

**THE COURT**: And, Mr. Nunez, are you then voluntarily giving up your right to counsel at this time?

**THE DEFENDANT**: Yes, I am.

**THE COURT**: Has anyone forced you, threatened you, or promised you anything or any other way induced you to give up your right to counsel?

**THE DEFENDANT**: Yes.

**THE COURT**: Who is that?

**THE DEFENDANT**: A lot of reasons why I feel as though I should proceed pro se is because counsel hasn't talked to me since my beginning of trial and after trial, and I advised the Court on Monday that I haven't spoken to Mr. Bruno and Your Honor told me that we will begin Wednesday. Now, Tuesday, I still hadn't spoke to Mr. Bruno. He haven't talked

to me. There's no pretrial motions for me that have been filed or any such pretrial motions have been filed to protect my interests. I feel as though he's not familiar with the case. And being as though the prosecutor just gave me the transcripts, I feel as though Mr. Bruno has not -- doesn't understand the case thoroughly enough to cross-examine the witnesses, but I do. I feel obligated to represent myself, because I'm more familiar with my case than he is.

**THE COURT**: Has anyone promised you or threatened you in any way to represent yourself?

**THE DEFENDANT**: No
…

**THE COURT**: All right. Very well. Mr. Nunez, what I will do at this point is find that your decision to represent yourself is a knowing, intelligent, and voluntary decision. I'm going to pass this down to Mr. Nunez and have him sign his waiver of counsel form. I will permit you to represent yourself. I will ask Mr. Bruno to remain present and be available to you for advice and consultation during the course of the trial.

N.T., 11/9/2005 at 21–30.

During the roughly four-day trial, the Commonwealth presented testimony from Nunez's girlfriend, one of his prior co-defendants, two other witnesses, uniformed officers and detectives, and the assistant medical examiner. Nunez did his own opening, closing, cross-examinations, and arguments to the court. At least twice during the course of trial, the court reminded standby counsel that Nunez was representing himself and needed to make his own record. *See* N.T., 11/10/2005 at 158; N.T., 11/14/2005 at 145.

8

On the third day of trial, one of the jurors reported to the court that he had received a threatening phone call. The court questioned the juror in chambers without Nunez present, although Nunez's standby counsel was there. The juror told the court that the phone message was left in the early morning hours. N.T., 11/14/2005 at 5–6. Though it was unclear whether the call was related to Nunez's case, and the juror thought it might have been a hoax, the court noted it was "an odd coincidence" and the juror told the court that he was scared for his elderly parents. *Id*. at 5, 7–8. The trial judge, prosecutor, and standby counsel all asked the juror questions. At the conclusion of the *voir dire*, the judge decided the juror could remain impartial and permitted him to stay. *Id*. at 9 ("I'm satisfied he can be fair in this case. We will permit him to remain. We're just waiting for Mr. Nunez to get here[.]). All of this occurred before Nunez arrived for court. *Id*.

At the close of trial, the jury deliberated for approximately two hours before finding Nunez guilty of first-degree murder, criminal conspiracy, and possessing an instrument of crime. N.T., 11/16/2005 at 49–50. Nunez was sentenced to life without parole followed by an additional 7 ½ to 15 years, all to run consecutive to his other life sentence. *Id*. at 55–56.

### C.    Appellate and post-conviction proceedings

Nunez filed a direct appeal challenging, among other things, the trial court conducting *voir dire* of the potentially tainted juror without Nunez present when Nunez "was acting *pro se*." *Commonwealth v. Nunez*, 903 EDA 2007 at 5 (Pa. Super. Dec. 23, 2008). On this claim, the Superior Court held that Nunez "unequivocally exercised his right of self-representation" and did so voluntarily and knowingly. *Id*. at 9. The Superior Court also held that *voir dire* of a potentially tainted juror is a critical stage of the proceeding and so Nunez's rights were violated. However, the court conducted a harmlessness analysis and found the violation was harmless. *Id*. at 14–17. In so doing, the court seemed to conflate the right to represent oneself with the right to counsel: the court distinguished between this case, where stand-by counsel was present for the juror's *voir dire* and cases where no counsel was present at all during *voir dire* of a juror (where the Superior Court acknowledged that prejudice is presumed). *Id.* at 15. The court held that because standby counsel was present, "there was not a complete denial of counsel," and therefore Nunez was not entitled to relief. *Id.* The Pennsylvania Superior Court ultimately affirmed Nunez's judgment of sentence, and the Pennsylvania Supreme Court denied

allowance of appeal. *See id.*, *appeal denied*, 981 A.2d 218 (Pa. July 27, 2009) (Table).

Nunez then filed a timely petition pursuant to Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. § 9541–46. There, Nunez argued (among other things) that his direct appeal counsel was ineffective for framing Nunez's *voir dire* claim as implicating his right to be present as opposed to his right to represent himself. On appeal from the petition's denial, the Superior Court held that his direct appeal claim clearly encompassed both rights, and the court had expressly rejected both under a harmlessness framework. *Commonwealth v. Nunez*, No. 199 EDA 2012, 2014 WL 10988236, at *6–*7 (Pa. Super. Jan. 14, 2014). The court explained that it had explicitly rejected Nunez's invitation to find the error *per se* prejudicial, instead holding that, because Nunez was not entirely denied his right to counsel during the *voir dire*, a harmlessness analysis was appropriate. *Id.*

Nunez filed a *pro se* federal habeas petition in April 2014, which was stayed to allow him to exhaust additional claims in state court. ECF Nos. 1, 6. That stay was lifted in 2017 and counsel filed an amended petition raising seven claims and a renewed motion to stay the proceedings. ECF Nos. 22, 23. Nunez's second stay motion was granted and the case was placed back in suspense. In August 2022, the stay was lifted and Nunez filed a

11

memorandum of law in support of one claim and a motion to defer ruling on four of his seven claims still pending in state court. ECF Nos. 42, 43. The Court granted Nunez's motion, and ordered Respondents to respond to the following three grounds for relief:

1. Nunez's constitutional right to self-representation was violated when the trial court conducted *voir dire* of a potentially tainted juror without him;

2. The trial court erred in accepting Nunez's waiver of counsel as knowing, intelligent, and voluntary; and

3. Nunez's initial counsel, James Bruno, was ineffective in failing to conduct an adequate pre-trial investigation.

ECF No. 22 at 5–9.

Respondents now respond.

## II.    DISCUSSION

### A. The merits of Nunez's claim one should be reviewed *de novo* and, under *de novo* review, Nunez is due relief.

#### 1. The state courts' adjudication of Nunez's self-representation claim was contrary to clearly established federal law.

When a state court adjudicates a federal claim on the merits, habeas relief is foreclosed unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," as established by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

This standard is a "difficult [one] to meet . . . because it was meant to be." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015).

The clearly established federal law governing self-representation claims is found in *Faretta v. California*, 422 U.S. 806 (1975), and *McKaskle v. Wiggins*, 465 U.S. 168 (1984). In *Faretta*, the Supreme Court held that the Sixth Amendment includes an absolute right to represent oneself in a criminal proceeding, so long as the choice to do so is made knowingly. *Faretta*, 422 U.S. at 821, 833 ("It is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want."). Nine years later in *McKaskle* the Court expounded on *Faretta*, writing that an accused's "right to self-representation plainly encompasses certain specific rights to have his voice heard," including participating in *voir dire*. *McKaskle*, 465 U.S. at 174. The Court there held the right to self-representation is violated, *inter alia*, if standby counsel is allowed to question witnesses or "speak *instead* of the defendant on any matter of importance," even outside the presence of the jury. *Id*. at 178–79 (emphasis in original). The *McKaskle* Court explained that a violation of this right is "not amenable to a harmless error analysis" because the right is either respected or denied. *Id*. at 177 n.8.

The state court's adjudication of Nunez's self-representation claim on direct appeal was plainly contrary to *Faretta* and *McCaskle* because it improperly conducted a harmless-error analysis. Nunez argued on direct appeal that the trial court violated his right to represent himself when it conducted *voir dire* of a potentially tainted juror without him. And Nunez argued that, because this was a structural error, a showing of harm or prejudice was not required. But, although the Superior Court agreed that the trial court violated Nunez's right to represent himself, it disagreed that prejudice could be presumed and went on to conduct a harmless-error analysis. In doing so, the court apparently conflated the right to represent oneself with the right to counsel: it held that, because standby counsel was present for the *voir dire*, Nunez's right to counsel was not completely denied and the case was therefore susceptible to a harmlessness analysis.

The state courts committed two critical, interrelated errors that led to an adjudication that was contrary to clearly established federal law. First, the right to counsel and the right to self-representation, though both sounding in the Sixth Amendment, are distinct from one another. As the Supreme Court wrote in *Faretta*, a defendant must knowingly waive the right to the assistance of counsel in order to avail himself of the right to represent himself and that doing so forgoes any future claims of ineffective

assistance of counsel. *Faretta*, 422 U.S. at 835. As the Court explained, it is one thing to assure defendants the assistance of counsel and another to compel acceptance of counsel that is unwanted. *Id*. at 833. The Court further clarified the point in *McKaskle*, where it held that standby counsel's role to a *pro se* defendant is generally limited to ensuring the defendant complies with routine procedure, evidentiary rules, and courtroom protocol and cannot speak instead of the defendant. *McKaskle*, 465 U.S. at 183–84. The Superior Court's mistaken conflation of the right to counsel with the right to self-representation is contrary to this clearly established federal law.

The state courts' second error flows from the first: it was contrary to federal law to hold that the trial error was susceptible to a harmlessness analysis because Nunez's right to counsel was not completely denied. But, as explained above, the right question isn't whether Nunez's right to counsel was denied—it's whether Nunez's right to represent himself was violated. These two rights are not interchangeable, and the requisite analysis is not interchangeable either. Undoubtedly the state courts were correct that, if this were a right to counsel claim, the violation would be susceptible to a harmlessness analysis because Nunez was not denied counsel entirely during the *voir dire*. But this is a distinct denial of self-representation claim, which is structural error; harmlessness plays no part

in the outcome. *McKaskle*, 465 U.S. at 177 n.8; *see also U.S. v. Ottaviano*, 738 U.S. 586, 598 (3d Cir. 2013) ("A defendant's right to represent himself is structural and not amenable to harmless error analysis—it is either respected or denied."). So the state courts acted contrary to federal law by using a harmless-error analysis to reject Nunez's self-representation claim.

In sum, the state courts' conflation of the right to represent oneself with the right to counsel and conducting a harmless error analysis clearly proscribed by the United States Supreme Court was contrary to clearly established federal law. Therefore, § 2254(d) does not foreclose habeas relief here and this Court should review Nunez's claim *de novo*.

**2. Reviewed *de novo*, Respondents agree that Nunez is due relief on his self-representation claim because the trial court violated his Sixth Amendment right to represent himself at trial.**

In claim one of his petition, Nunez argues that the trial court denied him his Sixth Amendment right to represent himself when it conducted *voir dire* of a potentially tainted juror in Nunez's absence. Nunez further argues that this is structural error and no harmlessness analysis is required. Respondents agree.

There are three prongs to determining whether a defendant's right to self-representation was properly asserted and then violated by a trial court: (1) the defendant must clearly and unequivocally ask to proceed *pro se*; (2)

the trial court must then conduct a thorough inquiry to assure the defendant's choice is knowing and voluntary, including advising him of the dangers of self-representation; and (3) once the right is knowingly asserted, the *pro se* defendant "must be allowed to control the organization and content of his own defense," including *voir dire*. *Buhl v. Cooksey*, 233 F.3d 783, 792–93, 798–800, 804 (3d Cir. 2000) (relying on *Faretta*, 422 U.S. at 835, and *McKaskle*, 465 U.S. at 174).

As to the first two prongs, Respondents agree with the state courts that Nunez clearly expressed his desire to proceed *pro se* and waived his right to counsel knowingly. The trial court ascertained the reasons that Nunez wished to proceed *pro se* and advised him of the disadvantages of doing so. *See Buhl*, 233 F.3d at 798–99 (trial court's *Faretta* inquiry must explore both the defendant's reasons for wishing to represent himself and the dangers of doing so). Nunez wished to represent himself because he believed he was more familiar with the case than his court-appointed attorney and that he could do a better job. N.T., 11/9/2005 at 28. The court then engaged Nunez in a lengthy colloquy that reviewed the various disadvantages of self-representation and ensured proceeding *pro se* was Nunez's considered

choice. *See id*. at 22–29.[4] At the conclusion of the colloquy, the court found Nunez's decision to represent himself knowing, intelligent, and voluntary. *Id*. at 30. Respondents agree that the record shows that Nunez's choice was voluntary and the trial court's inquiry was sufficient. Indeed, Nunez's reason for wanting to proceed *pro se*, dissatisfaction with appointed counsel, is the same reason the Supreme Court accepted as valid in *Faretta*, and although a defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." *Buhl*, 233 F.3d at 794 (quoting *Faretta*, 422 U.S. at 834).

Agreeing that Nunez's intent was clear and his waiver was voluntary, Respondents move to whether his absolute right to self-representation was violated. The Supreme Court has made clear that, though standby counsel may be appointed to assist a *pro se* defendant, standby counsel's role is generally limited to assisting the defendant in "overcoming routine procedural or evidentiary obstacles to the completion of some specific task" and "ensur[ing] the defendant's compliance with basic rules of courtroom

---

[4] Although at one point Nunez answered "yes" to whether anyone had induced him to give up his right to counsel, further questioning from the trial court made clear that Nunez only felt like he could do a better job than his court-appointed lawyer, not that anyone coerced him. N.T., 11/9/2005 at 27–28.

protocol and procedure." *McKaskle*, 465 U.S. at 183. Indeed, a *pro se* defendant "must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id*. at 174. A violation of this right "cannot be harmless" and so is structural error. *Id*. at 177 n.8.; *Barney v. Administrator, New Jersey State Prisons*, 48 F.4th 162, 165 (3d Cir. 2022) (a violation of the right to self-representation is "structural").

Here, the trial court violated Nunez's right to self-representation when it conducted and completed *voir dire* of a potentially tainted juror without Nunez present. Recall that a juror contacted the court on the third day of trial and reported that he had received a threatening phone call and was afraid for his elderly parents. The court conducted *voir dire* of the potentially tainted juror in chambers with the prosecutor and standby counsel, but not Nunez. The parties present, which did not include Nunez, questioned the juror. Ultimately, the trial court allowed to juror to remain on the panel after feeling satisfied that he could remain impartial. The entire *voir dire* concluded and the trial court made its decision before Nunez had arrived for court that day.

Respondents agree that this process violated Nunez's right to represent himself. *Voir dire* is considered a critical stage of the proceeding and is explicitly envisioned by the Supreme Court's jurisprudence on this issue. *See McKaskle*, 465 U.S. at 174 ("A pro se defendant must be allowed . . . to participate in *voir dire*"); *Gomez v. United States*, 490 U.S. 858, 873 (1989) (*voir dire* is a critical stage of a criminal proceeding). And, unlike in cases where no violation was found, the trial court made the relevant decision—whether to exclude the potentially tainted juror—without Nunez's presence or input. *See U.S. v. Ottaviano*, 738 F.3d 586, 598–99 (3d Cir. 2013) (holding that *pro se* defendant's absence from courtroom during sidebar discussion of evidence did not violate his right to self-representation because no decisions were made without him, he was allowed to weigh in on the evidence when he returned, and the sidebar was not a critical stage of the proceeding).

The conclusion that the trial court violated Nunez's right to represent himself ends the analysis. This is structural error. *McKaskle*, 465 U.S. at 177 n.8. Thus, although Respondents agree with the Superior Court that the evidence against Nunez was compelling and so the error here was harmless, federal law is clear that harmlessness plays no role in evaluating this self-representation claim. *See Buhl*, 233 F.3d at 806 ("[W]e are not

oblivious to the force of the evidence against [the defendant], nor the cruelty or wantonness it establishes. However, as judges we must simply determine whether his right to conduct his own defense was either respected or denied."). Because Nunez's choice to represent himself was clear and knowing, and the trial court conducted *voir dire* of a potentially tainted juror without him, Respondents are constrained to agree that Nunez's rights were violated and that he is due relief in the form of a new trial. *See Barney*, 48 F.4th at 165 (a violation of the right to self-representation is "structural" and, if raised on direct appeal, entitles a petitioner to "automatic reversal").

III.    CONCLUSION

Fernando Nunez was sentenced to life in prison for first-degree murder and related offenses. Before trial began, the trial court allowed Nunez to represent himself and appointed standby counsel to assist him. The trial court then violated Nunez's right to represent himself when it conducted *voir dire* of a potentially tainted juror without Nunez present. Because this error is considered structural and thus not susceptible to a harmlessness analysis, this Court should grant a conditional writ of habeas corpus and order that Nunez be retried within 180 days or released from custody.

Respectfully submitted,


_/s/ David Napiorski_
David J. Napiorski, Esquire
Assistant District Attorney

**CERTIFICATE OF SERVICE**

I, David Napiorski, hereby certify that, on this 31st of March, 2023, the foregoing response was served *via* the Court's electronic filing system on all counsel of record in this matter.

*/s/ David Napiorski*
DAVID J. NAPIORSKI
Assistant District Attorney