**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **FERNANDO NUNEZ,** | : | **CIVIL ACTION** |
| **Petitioner,** | | |
| | : | |
| **v.** | | |
| | : | |
| **SUPERINTENDENT MASON, et al.,** | : | **NO. 14-2192 (MAK)** |
| **Respondents.** | : | |


**SUPPLEMENTAL MEMORANDUM**

Petitioner, Fernando Nunez, is a Pennsylvania state prisoner currently serving a sentence of life without parole for first-degree murder and related offenses.[1] This Court requested a supplemental memorandum from the parties addressing whether the "Pennsylvania Superior Court's harmless error review after finding the trial court committed error in violating Petitioner's non-waived constitutional right to be present during a critical stage of his trial" constituted an "unreasonable application of clearly established federal law," and whether Respondents complied with their responsibilities under the Pennsylvania and federal Crime Victims' Act in handling this matter. ECF No. 52 at 1.

---

[1] Nunez is also serving a second life sentence for offenses that are unrelated to the crime at issue in this case. That second life sentence will be unaffected by the disposition of this petition.

I.      BRIEF PROCEDURAL HISTORY

In May 2001, Russell Chrupalyk, owner of Adelphia Moving and Storage Company in North Philadelphia, hired Nunez to kill his business partner, Christopher Jastrzebski. In the early morning hours of May 13, 2001, Nunez and two co-defendants went to Adelphia Moving and Storage and completed their assignment.

Nunez was tried separately from his three co-defendants in November 2005 before the Honorable Sheila Woods-Skipper of the Philadelphia Court of Common Pleas. After a competency evaluation and a colloquy, the Court allowed Nunez to proceed *pro se* with the assistance of standby counsel. N.T., 11/9/2005 at 21–30. On the third day of trial, one of the jurors reported to the court that he had received a threatening phone call. The court questioned the juror in chambers without Nunez present, although Nunez's standby counsel was there. The trial judge, prosecutor, and standby counsel all asked the juror questions. At the conclusion of the *voir dire*, the judge decided the juror could remain impartial and permitted him to stay. *Id*. at 9.

Nunez was found guilty of first-degree murder, criminal conspiracy, and possessing an instrument of crime and sentenced to life without parole

followed by an additional 7 ½ to 15 years, all to run consecutive to his other life sentence. *Id*. at 55–56.

Nunez filed a direct appeal challenging, among other things, the trial court conducting *voir dire* of a potentially tainted juror without Nunez present when Nunez "was acting *pro se*." *Commonwealth v. Nunez*, 903 EDA 2007 at 5 (Pa. Super. Dec. 23, 2008). On this claim, the Superior Court held that Nunez "unequivocally exercised his right of self-representation" and that this right was violated. *Id*. at 9. However, the court then conducted a harmlessness analysis and found the violation was harmless. *Id*. at 14–17. The Pennsylvania Superior Court ultimately affirmed Nunez's judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal. *See id*., *appeal denied*, 981 A.2d 218 (Pa. July 27, 2009) (Table).

Nunez filed a *pro se* federal habeas petition in April 2014, which was stayed to allow him to exhaust additional claims in state court. ECF Nos. 1, 6. That stay was lifted in 2017, and counsel filed an amended petition raising seven claims and a renewed motion to stay the proceedings. ECF Nos. 22, 23. Nunez's second stay motion was granted, and the case was placed back in suspense. In August 2022, the stay was lifted, and Nunez filed a memorandum of law in support of one claim and a motion to defer ruling on four of his seven claims still pending in state court. ECF Nos. 42, 43. The

Court granted Nunez's motion and ordered Respondents to respond to three of Nunez's grounds for relief. Respondents filed a response conceding that Nunez's ground one, his self-representation claim, warranted habeas relief because the Superior Court's treatment of that claim was contrary to clearly established federal law. ECF No. 51. Nunez filed no reply. This Court then issued an order calling for supplemental briefing focused on whether the Superior Court's denial of Nunez's claim that his "right to be present" was violated  was an unreasonable application of clearly established federal law, and whether the District Attorney's Office complied with the Pennsylvania and federal Crime Victims' Acts in handling this case. ECF No. 52.

## II.    DISCUSSION

### A.  Nunez has not raised a claim that his right to be present was violated in his federal habeas petition.

In claim one of his petition, Nunez argues that the trial court denied him his Sixth Amendment right to represent himself when it conducted *voir dire* of a potentially tainted juror in Nunez's absence while he was *pro se*. He does not raise in either his exhausted or unexhausted claims that his right to be present was also violated. Because the right to be present and the right to represent oneself are separate and distinct rights that lead to separate claims, the Superior Court's treatment of any right-to-be-present claim

raised in state court has no bearing on the disposition of Nunez's claim that his right to self-representation was violated.

The idea that the Sixth and Fourteenth Amendments confer on a state criminal defendant the right to be present during his trial dates back to the nineteenth century and stems from the Sixth Amendment's confrontation clause. *See Lewis v. United States*, 146 U.S. 370, 373 (1892); *Snyder v. Massachusetts*, 291 U.S. 97 (1934). The Supreme Court later clarified that this right applies to all "critical stages" of a proceeding, *Powell v. Alabama*, 287 U.S. 45, 60 (1932), and that *voir dire* is one such critical stage, *Gomez v. United States*, 490 U.S. 858, 873 (1989). That the Sixth Amendment also includes the right to represent oneself was not announced until 1975. *See Faretta v. California*, 422 U.S. 806 (1975). This right, though also conferred by the Sixth Amendment, stems from the "structure of the Sixth Amendment" and reading all of its clauses together. *Id*. at 819–20.

A violation of a defendant's right to be present during critical stages of a proceeding is subject to a harmlessness analysis, whereas a violation of a defendant's right to represent himself is not. *Compare Rushen v. Spain*, 464 U.S. 114, 117–18 (1983) (holding right to be present subject to harmlessness analysis) *with McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (right to self-representation "is not amenable to a harmless error analysis"). Because

these are different rights, the violations of which have different remedies, they are raised and analyzed separately. *See*, e.g., *U.S. v. Ottaviano*, 738 F.3d 586, 598–99 (3d Cir. 2013) (recognizing that right to self-representation and right to be present claims are distinct and analyzing them separately). Indeed, on PCRA appeal in this case, the Superior Court clarified that, on direct appeal, it denied **both** a right-to-be-present claim and a self-representation claim, and applied a harmlessness test to each. *Commonwealth v. Nunez*, No. 199 EDA 2012, 2014 WL 10988236, at *6–7 (Pa. Super. Jan. 14, 2014). To the extent the Superior Court found that the denial of Nunez's right to be present was harmless, its resolution of that Claim was reasonable. Were such a claim raised in Nunez's federal pleadings, it would fail under 28 U.S.C. § 2254(d). But the claim at issue in these proceedings is that he was denied his right to self representation; accordingly, the state courts' treatment of any claim grounded in his right to be present has no bearing on the disposition of Nunez's federal habeas petition.

**B. Because the Superior Court's treatment of Nunez's self-representation claim contradicted governing law set forth in Supreme Court precedent, the court's determination was contrary to and an unreasonable application of clearly established federal law.**

When a state court adjudicates a federal claim on the merits, habeas relief is foreclosed unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," as established by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) 's two clauses have independent meanings. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000). Under the "contrary to" clause, a state court decision that "applies a rule that contradicts the governing law set forth in" the Supreme Court's cases or "confronts a set of facts that is materially indistinguishable from a decision of th[e] Court but reaches a different result" receives no deference. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams*, 529 U.S. at 405). Under the "unreasonable application" clause, federal courts also afford no deference to a state court decision when the state court "correctly identifies a governing legal rule but applies it in a manner that is . . . objectively unreasonable." *Williams*, 529 U.S. at 407, 409. A state court decision may also be an unreasonable application of clearly established federal law if it "unreasonably extends a legal principle to a new context [or] unreasonably refuses to extend the

principle to a new context where it should apply." *Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011). A petitioner need only satisfy one of 2254(d)(1)'s two independent clauses to win habeas relief. *See Lockyer v. Andrade*, 538 U.S. 63, 73–75 (2003).

Here, in applying a harmlessness analysis to a violation of Nunez's right to represent himself, the Superior Court applied a rule that "directly contradicts" the Supreme Court's dictates as set forth in *Farreta*, *McKaskle*, and their progeny, which were clearly established at the time of Nunez's trial. *See, e.g., Buhl v. Cooskey*, 233 F.3d 783, 808 (3d Cir. 2000); *see also McKaskle*, 465 U.S. at 174, 177 n.8 ("*pro se* defendants must be allowed…to participate in *voir dire*, question witnesses, and to address the court and the jury at appropriate points in the trial" and any violation of this right "cannot be harmless"). Thus, the Superior Court's treatment of this claim was "contrary to" "clearly established Supreme Court precedent" and receives no deference here. *Williams*, 529 U.S. at 405.

In order for the Superior Court's decision to also be an unreasonable application of clearly established federal law, the Superior Court would have had to either identify the correct legal rule and apply it unreasonably or fail to apply a general rule to a new, appropriate factual context. Although the Superior Court correctly identified the violation of Nunez's

right to self-representation, grounded in *Faretta*, its holding that the violation was subject to harmless error review failed to reasonably apply the Court's rule from *McKaskle* that such violations "cannot be harmless." *McKaskle*, 45 U.S. at 177 n.8. Though petitioners need only satisfy one of 2254(d)'s two prongs, Nunez satisfies them both. Because the Superior Court's treatment of this claim was both contrary to, and an unreasonable application of federal law, no deference is due.

**C. Respondents complied with the Pennsylvania and federal Crime Victims' Acts in handling this case.**

In addition to exploring the above substantive issue, this Court asked Respondents to discuss their obligations under and compliance with Pennsylvania's Crime Victims' Act (the "Pennsylvania Act") and the federal Crime Victims' Act (the "Federal Act"). ECF No. 52 at 1.

The Pennsylvania Crime Victims' Act, 18 P.S. § 11.101, *et seq.*, establishes a large reservoir of rights afforded to victims of crime in the Commonwealth of Pennsylvania. The Pennsylvania Act also bestows special responsibilities on prosecutors' offices in respecting the rights of victims. *Id*. § 11.213. Relevant here, prosecutors must notify a victim, upon request, of the filing, hearing or disposition of appeals. *Id*. § 11.213(f)(6). A prosecutor must also notify victims of the opportunity to offer prior comment on sentencing and of dispositional proceedings. *Id*. § 11.213(c), (e).

The federal Crime Victims' Act, 18 U.S.C. § 3771, affords victims a similar set of rights in habeas corpus proceedings. § 3771(b)(2). Specifically, crime victims may not be excluded from public court proceedings, they have a right to be reasonably heard, they have a right to proceedings free from unreasonable delay, and they have a right be treated with fairness and with respect for the victim's dignity and privacy. § 3771(a) (as limited by § 3771(b)(2)).

Here, Respondents met their responsibilities under both the Pennsylvania and federal acts. Prior to filing its response in this matter, Respondents' victim services coordinator contacted the victim's sister—his only living next-of-kin—to provide notice of Respondents' position and explain what was happening in the case. The victim's sister relayed that she understood, and though she was not happy about the idea of relief being granted in this case, she was satisfied that regardless of the disposition of this matter, Nunez will not be released and will remain incarcerated on his other life sentence. In response to this Court's April 6, 2023 order, ECF No. 52, Respondents provided copies of Nunez's Petition and Memorandum of Law, the Respondents' Response, and the Court's Order to the victim's sister. *See* ECF Nos. 53, 54. Respondents also discussed the matter with her, and she orally informed Respondents that she does not wish to submit

anything to either Respondents or the Court, though she wishes to be kept apprised of dates moving forward. She also reported that, in the event there is a re-sentencing in state court, she plans to attend and provide an impact statement to the court at that time. She also stated that she hoped for an expeditious disposition, regardless of the result of the habeas petition.

As they have throughout these proceedings, Respondents will continue to notify the victim's family of any sentence modifications, public hearings, or dispositional filings consistent with their responsibilities under the Pennsylvania and federal Acts. Should there be any change in the victim's sister's position, Respondents will promptly inform the Court.

## III.  CONCLUSION

For the reasons set forth above and in Respondents' response to Nunez's Petition, ECF No. 51, Respondents agree that Nunez's is entitled to relief on claim one of his habeas petition because his right to self-representation was violated, which is structural error, and the state courts' resolution of his claim was contrary to and an unreasonable application of clearly estab-lished federal law.

Respectfully submitted,

_/s/ David Napiorski_
David J. Napiorski, Esquire
Assistant District Attorney

11

**VERIFICATION**

I, Heather Wames, hereby certify that the information contained in the foregoing supplemental response regarding victim contact and notice is true and correct to the best of my knowledge.


Date:  5/10/2023

*/s/ Heather Wames*
HEATHER WAMES
Assistant Supervisor
Victim Services Unit

**CERTIFICATE OF SERVICE**

I, David Napiorski, hereby certify that, on this 10th of May, 2023, the foregoing memorandum was served *via* the Court's electronic filing system on all counsel of record in this matter.

/s/ *David Napiorski*
DAVID J. NAPIORSKI
Assistant District Attorney